WOODLAND UTILITY COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 13, 1979—Decided March 1, 1979.

Before Judges Conford, Pressler and King.

*Mr. Robert C. Schachter* argued the cause for appellant (*Messrs. Greenbaum, Greenbaum, Rowe & Smith,* attorneys for appellant).

*Mr. Richard Hluchan* argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney for respondent).

The opinion of the court was delivered by
King, J. A. D. Appellant, a utility company formed to provide sewerage services for a proposed 5,000-unit senior

citizens' development, challenges the validity of the revocation of a so-called "conceptual approval" for sewer construction previously issued by the Division of Water Resources (DWR) of the Department of Environmental Protection (DEP). The proposed project lies wholly within the drainage area of the South Branch Rancocas Creek in the Central Pine Barrens.

In December 1973 appellant applied to the DWR for preliminary approval of its proposed waste water treatment and disposal facilities for the project pursuant to then-effective *N. J. A. C.* 7:9–1.7, which stated in full:

(a) Preparation of a preliminary report and plan is advisable before detail design proceeds.

(b) Preliminary data shall be discussed with the Department engineers before final decisions are made.

(c) Formal comments will be made by the Department on preliminary data if requested.

Appellant's concept was to construct a 600,000 gallon per day plant (gpd) with effluent disposal through ground absorption beds. Following the application representatives of appellant and the DEP discussed the proposal and conducted extensive field investigations. In November 1974 the DEP granted "conceptual approval" for the first phase of the project, a 300,000 gpd waste treatment facility subject to five conditions.

Appellant made no effort to proceed towards obtaining final construction approval of the first phase of its facility between November 1974 and September 1977. Appellant contends and we accept as an explanation for much of the delay the pendency of zoning litigation involving the housing project which was not resolved until the opinion of our Supreme Court was rendered in *Shepard v. Woodland Tp. Comm. and Planning Bd.*, 71 *N. J.* 230 (1976), on September 28, 1976.

On September 23, 1977 the DEP declared its prior conceptual approval for the first phase as "null and void" on two grounds: (1) the extensive period of time since the grant of

approval during which "no plans or communications were received," and (2) interim upgrading of environmental standards by departmental regulations.

The DEP was apparently attempting to revoke all conceptual approvals in order to compel compliance with upgraded standards announced in the wake of the passage of the Water Pollution Control Act, *L.* 1977, *c.* 74; *N. J. S. A.* 58:10A-1 *et seq.* Pursuant to *N. J. S. A.* 58:10A-4 the DEP issued amended regulations, effective December 16, 1977, which classified the South Branch Rancocas Creek within the critically designated Central Pine Barrens. *N. J. A. C.* 7:9-4.8(b)(2) and (7). The new regulations recognized the Central Pine Barrens as a "unique and particularly fragile ecosystem" and announced a policy "not to approve any activity which * * * will cause degradation in the existing surface water quality characteristics." *N. J. A. C.* 7:9-4.4 (a)(20). Despite this broad statement of policy the DEP continues to tolerate some degree of pollution in its criteria governing Central Pine Barren surface water quality, *N. J. A. C.* 7:9-4.6(i)(1)(i)(5),(A) and *N. J. A. C.* 7:9-4.6(i) (2), and ground water quality, *N. J. A. C.* 7:9-14.4(a)(2); *N. J. A. C.* 7:9-14.7(a)(5)(i) and *N. J. A. C.* 7:9-14.6(b).

We cannot tell from the present record whether or not the pollution level anticipated in the conceptual approval would actually exceed permissible levels under the new regulations. But appellant makes no present contention that its conceptual approval complies with the upgraded regulations. Indeed, at oral argument counsel was unable to enlighten us as to whether the project could even be constructed under the new standards. The conceptual permit had been issued under a prior regulation controlling the level of water quality degradation. *N. J. A. C.* 7:9-8.4. On October 3, 1977 appellant filed application for final approval to construct the treatment plant per the conceptual approval granted in November 1974 under the prior regulations. The DEP refused to accept the application and returned the documents and fees. On October 19 appellant's attorney notified the DEP in writing of its

reservation of a right to a hearing on the revocation. On February 22, 1978, apparently after fruitless negotiations, appellant's attorney demanded a hearing on the revocation of the conceptual approval. On March 10, 1978 the DEP denied the hearing request, stating: "There is no right to an administrative hearing upon the denial or revocation of a 'conceptual approval' of a sewage plant." The DEP further advised appellant that the new regulations adopted in 1977 for conceptual approval and construction approval must now be met.

Appellant here contends that due process, fundamental fairness, and the Administrative Procedure Act require that the DEP conduct a hearing on the revocation. Appellant makes no substantive attack on the 1977 regulations. We were advised at oral argument that these new regulations were attacked in other proceedings by a builders' trade association, an appeal from which proceeding is now pending in this court. Appellant's attack on the administrative action is limited to the alleged procedural irregularity — denial of a hearing.

The regulations provide for revocation of approvals by the DEP as follows:

N. J. A. C. 7:14–2.7  Revocation of approvals
(a) The commissioner may modify, suspend, or revoke an approval in whole or in part for cause, including but not limited to the following:
1. Violation of any term or condition of the approval;
2. Obtaining an approval by misrepresentation or failure to disclose fully all relevant facts;
3. The nonconformance of the facility with any applicable facility, basin or areawide plans;
4. If such approval is inconsistent with any duly promulgated effluent limitation, permit, regulation, statute, or other applicable State or Federal law.

This is the only administrative provision treating of revocations. There is no statute or regulation compelling a revocation hearing.

Appellant appears to contend that it has a legally vested right to proceed to construction pursuant to the November 1974 conceptual approval notwithstanding the 1977 upgraded regulations. We disagree with this contention. No final construction approval as required by *N. J. A. C.* 7:8–3.17 was applied for or granted prior to the upgrading of the regulations. No construction of either the housing project or the waste treatment works facility had been undertaken prior to the revocation. At oral argument appellant's counsel stated that reliance to the date of revocation was essentially limited to planning costs and legal expenses.

In this case we conclude that appellant had no property right sufficient to trigger the requirement of a hearing. *Cunningham v. Civil Service Dep't,* 69 *N. J.* 13, 23–24 (1975). It would be most illogical to confer a greater right upon conceptual approvals than the regulations confer upon approval to build. Under *N. J. A. C.* 7:14–2.22 an approval to build "shall expire and become void two years after the date of issuance unless building, installing or modifying of such treatment works has begun." Nor was the quality of appellant's alleged reliance to the date of revocation sufficient to persuade us that a remand for a hearing is mandated to create a record on whether the equities require the invocation of the doctrine of estoppel against the DEP. *Cf. Donadio v. Cunningham,* 58 *N. J.* 309 (1971); *Tremarco Corp. v. Garzio,* 32 *N. J.* 448 (1960); *Sautto v. Edenboro Apts., Inc.,* 69 *N. J. Super.* 420 (App. Div. 1961). We accept appellant's contention of the bona-fides of the 34-month delay so an evidentiary hearing thereon is unneeded.

Nothing in the facts of this case or in the regulatory scheme persuades us that appellant should be entitled to an "open-ended" vested right to a conceptual pre-construction approval thereby avoiding subsequently upgraded ecological standards. See *Parkway Mall v. Water Policy & Supply Council,* 157 *N. J. Super.* 169, 173 (App. Div. 1978). Moreover, there is nothing in the Administrative Procedure Act, *N. J. S. A.* 52:14B–1, *et seq.,* which mandates a hearing in this

case. The act does not create a substantive right to a hearing. It "merely prescribes the procedure to be followed in the event an administrative hearing is otherwise required by statutory law or constitutional mandate." *In re Application of Modern Indust. Waste Service,* 153 *N. J. Super.* 232, 237 (App. Div. 1977). We conclude that the denial of a hearing by the DEP did not in this case violate appellant's constitutional, statutory or regulatory rights.

Affirmed.